**FN MANUFACTURING, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**Colt's Manufacturing Company, Inc., Intervenor.**

No. 98–447 C.

United States Court of Federal Claims.

June 30, 1998.

Richard C. Johnson, David A. Handzo, Kevin M. Kordziel, and Sidney A. Rosenzweig, Jenner & Block, Washington, DC, for plaintiff.

Lance J. Lerman, Washington, DC, with whom were Assistant Attorney Frank W. Hunger, Director David M. Cohen, and Anthony H. Anikeeff, Department of Justice, for defendant. Vera Meza, United States Army Material Command, and Maria Bribriesco, United States Army Armament and Chemical Acquisition and Logistics Activity, of counsel.

Michael A. Hordell and Laura L. Hoffman, Gadsby & Hannah, LLP, Washington, DC, for intervenor.

## ORDER

### DENYING INTERVENOR'S MOTION TO DISMISS

WIESE, Judge.

### I

*Introduction*

Plaintiff, FN Manufacturing, Inc. (FNMI), filed this action for injunctive relief on May 15, 1998, challenging the award, on May 5, 1998, of a sole-source contract to Colt's Manufacturing Company (Colt's). Colt's, the intervenor here, subsequently filed a motion to dismiss on the grounds that FNMI lacked standing to protest the award and that its protest was untimely.

The issues have been briefed by the parties and oral argument was heard on June 23, 1998. For the reasons set forth herein, the court denies the motion to dismiss.

*The Argument*

Colt's seeks dismissal of the present action on two grounds. It contends, first of all, that in order to invoke the court's injunctive authority under 28 U.S.C.A. § 1491(b)(1) (West 1997 & Supp.1998), an applicant for equitable relief must show that it is an "interested party"—a reference to the words of limitation appearing in the cited statute[1] that, according to Colt's, demand an applicant's actual participation in the challenged

---

1. The term "interested party" is taken from the text of 28 U.S.C.A. § 1491(b)(1) which reads, in part, as follows:

"Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement...."

procurement through the submission of a timely bid. The failure to submit a timely bid, Colt's contends, precludes a litigant from qualifying as an interested party with standing to protest a contract award. In this case, FNMI's proposal was submitted 47 days after the posting of the solicitation on the Commerce Business Daily Internet site. Since the submission exceeded the indicated 45-day deadline by two days, Colt's contends that FNMI is disqualified from proceeding here.

Second, Colt's contends that even if the court were to conclude that FNMI qualifies as an interested party, nevertheless FNMI should not be allowed to go forward because its suit was not timely-filed. The argument rests on the proposition that the core dispute that FNMI endeavors to present here—a challenge to the conduct of the procurement on a sole-source basis—involves an issue that should have been raised either within ten days of the posting of the Commerce Business Daily announcement or, alternatively, before the close of the proposal period.[2] The premise underlying Colt's argument is that, as an applicant in search of equitable relief, FNMI had the responsibility to raise any facially-apparent challenges concerning the validity of the procurement before, rather than after, affected parties undertook significant changes in position.

Having evaluated the arguments set forth by Colt's and by the Government, the court concludes that FNMI's proposal was, in fact, timely-submitted. Accordingly, we do not reach the broader question of whether a timely-submitted proposal is, in every instance, a prerequisite for challenging an award decision. Further, concerning Colt's second argument, the court holds that the solicitation's inclusion of Note 22—requiring government consideration of any proposal submitted within a 45-day period despite the sole-source nature of the procurement—necessarily precludes the imposition of a protest-filing deadline that falls before any such proposal has been considered.

II

*Facts*

On March 19, 1998, the United States Army Armament and Chemical Acquisition and Logistics Activity ("ACALA") posted an announcement for a sole-source procurement of M4/M4A1 carbines on the Commerce Business Daily Internet site. Although the notice indicated that the procurement would be restricted to Colt's Manufacturing Company, it incorporated Note 22—a mandatory notice affording potentially competing contractors 45 days in which to submit proposals for the government's review.[3]

Four days after the Internet posting—on March 23, 1998—ACALA published a copy of the same announcement in the hard-copy (paper) version of the Commerce Business Daily. The printed version—identical to its on-line predecessor—referenced Note 22, giving interested parties 45 days in which to respond to the government's solicitation announcement.

On May 5, 1998—47 days after the Internet posting but only 43 days after the publication of the printed copy—ACALA awarded a sole-source contract to Colt's Manufacturing. As a consequence, FNMI's proposal, received by ACALA on May 6, 1998, was not considered by the Army as contemplated by

2. The 10-day period referred to by Colt's is taken from the time period applicable to protest filings before the agency. *See* 48 C.F.R. § 33.103(e)(1997).

3. The Federal Procurement Regulations dictate the inclusion of Note 22 in all proposed contract actions intended for award on a sole-source basis. *See* 48 C.F.R. § 5.207(e)(3)(1997). Note 22 reads as follows:

The proposed contract action is for supplies of services for which the Government intends to solicit and negotiate with only one source under authority of FAR 6.302. Interested persons may identify their interest and capability to respond to the requirement or submit proposals. This notice of intent is not a request for competitive proposals. However, all proposals received within 45 days ... after date of publication of this synopsis will be considered by the Government. A determination by the Government not to compete this proposed contract based upon responses to this notice is solely within the discretion of the Government. Information received will normally be considered solely for the purpose of determining whether to conduct a competitive procurement.

Note 22. On May 15, 1998, FNMI filed this protest.

FNMI now maintains that the 45-day period set out in Note 22 should be measured from the date the hard-copy notice was published in the Commerce Business Daily, thus affording it until May 7 to submit its proposal. FNMI thus contends that its own proposal—submitted 48 days after the Internet posting but 44 days after publication of the printed copy—was timely and that ACALA's action in awarding the contract to Colt's was therefore premature. In its motion to dismiss, Colt's contends—and the Government joins in this position—that the 45-day period begins instead with the date of Internet posting—a time marker that Colt's further asserts is particularly appropriate here in light of the actual knowledge it alleges FNMI possessed of the earlier-dated announcement.

### III

*Analysis*

■ The question now before the court is whether the 45-day period for the submission of proposals under Note 22 begins with the posting of notice on the Internet or with the publication of notice in print. Colt's urges the court to adopt the former date on the grounds that the Internet site represents the "official" version of the Commerce Business Daily, that reliance on the Internet is in keeping with both developing industry practice and governmental policy initiatives (notably Vice–President Gore's efforts to minimize paper-based transactions in government) and, finally, that the Internet posting corresponds with the date of FNMI's actual knowledge of the solicitation.

During oral argument, both Colt's and the Government contended that ACALA's reliance on the Internet date in calculating the 45-day period was not improper because— they asserted—the relevant procurement regulations do not preclude an executive agency from relying on Internet posting as the means by which to satisfy the "publication" requirement imposed by 41 U.S.C.A. § 416 (West 1997 & Supp.1998). We disagree. A review of the statute reveals that, for procurements in excess of $100,000 (the case here), the "publication" that is intended may only be accomplished through the printed version of the Commerce Business Daily, and not through its electronic equivalents.

Pursuant to 41 U.S.C.A. § 416(a)(1), an executive agency intending to (i) solicit bids or proposals for a contract for property or services expected to exceed $25,000 or (ii) place orders under a basic ordering agreement in an amount expected to exceed $25,000, must "furnish for publication by the Secretary of Commerce a notice [describing the intended procurement]." The Secretary of Commerce, in turn, is directed by 41 U.S.C.A. § 416(a)(2) to "publish promptly in the Commerce Business Daily each notice required by paragraph (1)."

The statute then goes on to enumerate exceptions to the publication requirement. Among these is the exception called out in 41 U.S.C.A. § 416(c)(1)(A). That section reads as follows:

> (1) A notice is not required under subsection (a)(1) of this section if—
>
> (A) the proposed procurement is for an amount not greater than the simplified acquisition threshold [$100,000] and is to be conducted by—
>
> (i) using widespread electronic public notice of the solicitation in a form that allows convenient and universal user access through a single, Government-wide point of entry; and
>
> (ii) permitting the public to respond to the solicitation electronically.

Given the statutory scheme described above,[4] it is at once apparent that, by sanc-

---

4. The version of 41 U.S.C. § 416(c)(1) that is quoted in the above text was enacted into law on November 18, 1997, as section 850(e)(2) of the National Defense Authorization Act for Fiscal Year 1998, Pub.L. No. 105–85, 111 Stat. 1629, 1848–1850, effective May 15, 1998. The earlier version of the statute, which technically remained in effect during the solicitation period in question here, also permitted—as does the statute's current version—limited use of electronic notification of governmental procurement actions. Unlike the present statute, however, the predecessor version restricted electronic notification to the so-called FACNET—the Federal Acquisition Computer Network. The difference between the two versions of 41 U.S.C. § 416(c)(1)

**190**

tioning public notice through electronic means as an exception to the publication requirement in the case of procurements involving $100,000 or less, Congress implicitly distinguished electronic media from print publication. It is in fact the very contrast between published notice and electronic notice set forth in the statute which leads this court to the conclusion that "publication" cannot be said also to include posting on the Internet. The exception listed in the statute must be read to allow substitution of electronic transmissions for published (i.e. paper) notice only when the specified conditions are met. Accordingly, we see no legislative grounding for the proposition that the Internet—clearly an electronic medium—may serve as a surrogate for printed publication.

But even if this court were to accept the argument that ACALA could unilaterally adopt a system of notification by Internet, the court would still be left with the question of whether ACALA had in fact officially adopted the Internet posting date as the publication date for timing purposes. Intervenor directs us to no regulation or official announcement changing the date of publication from the traditional method of printing notice in the Commerce Business Daily to the posting of notice on the Commerce Business Daily's on-line equivalent. While ACALA may in fact employ electronic media and may do so both with the Administration's encouragement and with the contracting community's knowledge and participation, its action alone—lacking any formal pronouncement—cannot alter the existing, statutorily-directed method of publication. Additionally, the fact that a contractor may have had actual notice that preceded the printed version of an announcement—a circumstance which, according to an FNMI affidavit, did not occur in the present case—has no impact on the court's decision. There can be only one publication date applied to all offerors; objective deadlines do not—and cannot—take into account the subjective knowledge of each offeror.

■ The court further holds that plaintiff's protest—brought within 10 days after ACA-

does not affect the court's analysis—the analysis remains the same regardless of which version of

LA had awarded the contract to Colt's and the evaluation of FNMI's proposal under Note 22 would have been concluded—was timely-filed. Any timing requirement which mandates the filing of a protest before such proposals can be evaluated would render Note 22 meaningless. We decline to adopt such a requirement.

## IV

*Conclusion*

Because this court holds that the 45–day period set forth in Note 22 begins with the publication of notice in the printed version of the Commerce Business Daily, we conclude that plaintiff's proposal was timely-submitted and that plaintiff, in turn, is an interested party within the meaning of 28 U.S.C.A. § 1491. We further hold that plaintiff's protest was timely-filed. Accordingly, the motion to dismiss is denied.

the statute the Government's actions are evaluated against.